UNITED STATES, Appellee,

v.

Seaman Recruit Dean L. SIMONDS,

U.S. Navy, Appellant.

No. 49069.
NMCM 83 3497.

U.S. Court of Military Appeals.

Aug. 26, 1985.

For Appellant: *Lieutenant Colonel M. W. Lucas,* USMC (argued); *Lieutenant Ann D. Carroll, JAGC, USNR.*

For Appellee: *Lieutenant Commander Jeffrey S. Sawtelle, JAGC, USN* (argued); *Captain W.J. Hughes, JAGC, USN* (on brief).

*Opinion of the Court*

COX, Judge.

The accused was tried by general court-martial without members. Pursuant to his pleas, he was convicted of the sale of government property; willful damage of government property; larceny (3 specifications); wrongful appropriation; and housebreaking (2 specifications), in violation of Articles 108, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 908, 921, and 930, respectively. The adjudged sentence extended to a dishonorable discharge; confinement at hard labor for 5 years; and forfeiture of $350.00 pay per month for 60 months. In accordance with a pretrial agreement, the convening authority suspended all confinement at hard labor in excess of 24 months for 1 year and reduced the forfeitures to $286.00 pay per month for 60 months. The Court of Military Review affirmed in a short-form decision. This Court granted review of the following issue:

WHETHER APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 1 OF CHARGE III ALLEGING THE UNAUTHORIZED SALE OF MILITARY PROPERTY WAS IMPROVIDENT.

Finding no error, we affirm.

We must now address the issue we reserved in *United States v. Schelin,* 15 M.J. 218 (C.M.A.1983). There, in holding that retail merchandise of the Army and Air Force Exchange Service was not "military property of the United States" in the sense of Article 108, we noted the following:

We limit our decision here to the Army and Air Force Exchange Service. Because of their separate development and possible differences in structure not before the Court, we make no comment on the status of retail property of Navy, Marine Corps, and Coast Guard exchanges and stores.

*Id.* at 220 n. 6.

The specification at issue here alleges that the accused did "without proper authority, sell to Seaman ... , a Canon A–1

camera, of some value, military property of the United States." During the providence inquiry the military judge defined "military property of the United States" as "any property owned by or intended for use by a military service of the United States." The accused admitted that the camera was "owned by or intended for use by the United States Navy." However, on appeal, appellate defense counsel, citing our decision in *United States v. Schelin, supra,* contend the camera, admittedly the property of the ship's store afloat of the USS ENTERPRISE (CVN–65), does not fall within the definition of "military property" covered by Article 108.

In *Schelin,* we noted the lack of legislative history interpreting these words. Accordingly, we held:

In the absence of any Congressional guidance, it seems most likely to us that "military property" was selected for special protection due to its role in the national defense. In other words, it is either the uniquely military nature of the property itself, or the function to which it is put, that determines whether it is "military property" within the meaning of Article 108. We do not suggest that it is only tanks, cannons, or bombers that merit the protection of Article 108, for many items of ordinary derivation are daily put to military use. However, retail merchandise of the Army and Air Force Exchange Service does not seem to fit into that specially-protected category.

*Id.* at 220 (footnote omitted).

The significant factual difference here is that the merchandise in the ship's store is purchased by an appropriated-fund activity managed by the Navy Supply Corps.[1] In a

general sense, all property purchased with federal funds and owned or held by a service is military property. *United States v. Blevins,* 34 C.M.R. 967 (A.F.B.R.), *pet. denied,* 15 U.S.C.M.A. 669, 35 C.M.R. 478 (1964). We may presume that items purchased with funds appropriated by Congress to a military department fall within the definition of "military property." The purpose of the ship's store is to enhance the morale of the crew of the vessel. As appellate government counsel cogently argue:

The purpose of a ship's store is to provide a convenient and reliable source where sailors, particularly while at sea, can obtain their ordinary needs at affordable prices. In fact, while at sea, the ship's store is the only source for such needs. But for the ship's store, those needs would have to be met by the Command at a considerable expense to the Navy. Consequently, a ship's store is factually distinguishable from a Post or Base Exchange, or even the Navy Exchange, which serve only as alternative sources for satisfying such needs ashore. In other words, the ashore service member may frequent a local exchange as well as countless civilian establishments, while the sailor at sea has no such choice.

Thus, a ship's store performs a morale and welfare function which is an integral part of the naval forces. Providing for the health, morale, and welfare of the crew is as much a military purpose as is providing weapons and ammunition. Indeed, the maintenance of health, morale, and welfare of the crew is essential to the successful completion of the command's mission. Since ship's store mer-

---

1. Paragraph 1003, NAVSUP PUB 487, SHIP'S STORE AFLOAT, revision 1, FUNCTIONS OF THE NAVY STOCK FUND AND THE NAVY STOCK ACCOUNT, provides:

The Navy Stock Fund finances the original procurement of all ship's store stock, operating supplies, and minor equipment. The Navy Stock Fund is ultimately credited with the cost price of sales, issues, and surveys of Navy Stock Account stock. The Navy Stock Fund is self-replenishing. After ship's store

stock has been procured, such stock becomes part of the Navy Stock Account and is designated by functional account 51000. Ship's store stock remains in the Navy Stock Account until expended at which time the Navy Stock Fund is credited in the amount of the cost of the material expended. Ship's store stock held in the Navy Stock Account is government property until sold or otherwise expended.

chandise is intended and furnished for use by crew members, its wrongful disposition and sale has a direct adverse impact on the morale and welfare of the crew.

The fact that the camera the accused took from the ship's store and then sold to a shipmate is of a type that could have been purchased from an on-shore exchange, or, for that matter, at a civilian establishment, does not alter our decision.[2] Our decision is also unaltered by the fact that a camera, *qua* camera, is not normally considered to be an item of military (or naval) necessity. It may be remembered that the rum ration was as important to the

iron men in wooden ships as is ice cream to the nuclear submariners. The ship's store is a part of naval history and tradition; if the Navy chooses to stock therein cameras and stereo equipment purchased with government funds for the morale and welfare of its men at sea, then such items are, indeed, "military property" and subject to the protection of Article 108.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.

---

**2.** Authority is given to purchase from Navy Exchanges in paragraph 1133, NAVSUP PUB 487, *supra.*