**UNITED STATES**

v.

**Sergeant Winston THOMAS, Jr., FR 350–54–7573, United States Air Force.**

**ACM 28101.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 27 June 1989.

Decided 11 Oct. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Michael D. Burt.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni and Captain Leonard R. Rippey.

Before LEONARD, RIVES and McLAUTHLIN, Appellate Military Judges.

## DECISION

McLAUTHLIN, Judge:

Sergeant Winston Thomas, Jr. pleaded and was found guilty of four specifications of larceny of military property and one specification of false official statement, after his motion to strike "military property" from the larceny specifications was denied. His general court-martial sentenced him to a bad conduct discharge, confinement for 12 months, forfeiture of $300.00 pay per month for 12 months and reduction to airman basic. Following approval of his sentence by the convening authority, he asserts again on appeal that the funds he is convicted of stealing were not military property of the United States. We agree.

I

In late December 1988 and early January 1989, Thomas made a Permanent Change of Station (PCS) move from Scott AFB, Illinois to Elmendorf AFB, Alaska. He arrived in Alaska accompanied solely by his girlfriend. However, his claims for temporary lodging (TLA), cost of living (COLA), and variable housing allowances (VHA) all indicated he had been accompanied by his wife and son. He also claimed expenses for a do-it-yourself move for his wife and son from Chicago to Seattle. In truth, Thomas' wife and son never left Chicago, where they had been living since the family broke up in March 1988. Thomas added to these misrepresentations by improperly inflating his TLA and VHA claims and by falsely claiming his wife's identification (ID) card was lost to get an ID card for his girlfriend. This all netted Thomas an extra ID card, nearly $5700.00 in excess entitlements, and a court-martial conviction.

The four specifications enumerating Thomas' thefts in violation of Article 121, UCMJ, 10 U.S.C. § 921, alleged that the funds stolen were "military property." By pleading in this manner, the maximum confinement allowed for each larceny was increased from five to ten years. MCM, Part IV, para. 46e(1)(c). Thus, adding the five year maximum confinement authorized for false official statement (MCM, Part IV,

para. 31e), Thomas faced a total maximum confinement of 45 years.

## II

■ For a definition of "military property of the United States" subject to a larceny, the Manual for Courts–Martial refers to the definition provided for the offense of wrongfully disposing of military property in Article 108, UCMJ, 10 U.S.C. § 908. MCM, Part IV, para. 46b(1) (1984). That definition provides:

> Military property is all property, real or personal, owned, held, or used by one of the armed forces of the United States.... Retail merchandise of service exchange stores is not military property under this article.

MCM, Part IV, para. 32c(1). The analysis says the first sentence of this definition was based upon MCM, para. 187 (1969 Rev.) and refers to a number of military appellate court decisions. The last sentence was based upon *United States v. Schelin*, 15 M.J. 218 (C.M.A.1983). MCM, App. 21, para. 32c (1984).

The "military property" language in Article 108, UCMJ finds its roots in Articles of War 83 and 84 and a portion of 94 from 1949. Legal and Legislative Basis, Manual for Courts–Martial, U.S., 1951 at 198. Article of War 83 addressed loss, damage or wrongful disposition of "military property belonging to the United States." "Military property" in that Article was described as "a type and kind issued for use in, or furnished and intended for the military service." MCM, U.S. Air Forces, para. 171 (1949).[1]

Article of War 84 dealt with selling or wrongfully disposing of military property, defined as "any property issued for use in the military service." MCM, U.S. Air Forces, para. 172a (1949).[2] Article of War 94 addressed stealing, larceny,[3] embezzlement, misappropriating, misapplication, sale and wrongful disposition of "property of the United States furnished or intended for the military service,"[4] specifically not including "post exchange, company, or officers' club funds or property or money appropriated for other than the military service." MCM, U.S. Air Forces, para. 181h (1949).

Few military appellate court decisions discuss the meaning of "military property," and we find no decision directly addressing the issue we face in this case: whether military monetary allowances are "military property" under Article 121, UCMJ. In *United States v. Schelin*, the Court of Military Appeals agreed with our assessment that nonappropriated Army and Air Force Exchange Service (AAFES) property was

---

1. The 1949 Article of War 83 is worded the same as its 1916 and 1920 predecessors. *Military Laws of the United States*, at 191–192, 8th ed. (1939). The 1916 Article of War 83 originated with Article 15 of the 1874 Articles of War, *Id.* at 164, which provided:

   Any officer who, willfully or through neglect, suffers to be lost, spoiled, or damaged, any military stores belonging to the United States, shall make good the loss or damage, and be dismissed from the service.

   Articles of War, ch. 5, 18 Stat. 231 (1874).

2. The 1949 Article of War 84 is also worded the same as its 1920 and 1916 predecessors. *Military Laws of the United States*, at 192, 8th ed. (1939). The 1916 Article of War 84 corresponded to Articles 16 and 17 of the 1874 Articles of War, *Id.* at 164, which read as follows:

   ART. 16. Any enlisted man who sells, or willfully or through neglect wastes the ammunition delivered out to him, shall be punished as a court-martial may direct.

   ART. 17. Any soldier who sells or, through neglect, loses or spoils his horse, arms, clothing, or accouterments, shall suffer such stoppages, not exceeding one-half of his current pay, as a court martial may deem sufficient for repairing the loss or damage, and shall be punished by confinement or such other corporal punishment as the court may direct.

   Articles of War, ch. 5, 18 Stat. 231 (1874).

3. The Articles of War were superseded by the UCMJ. The UCMJ contained no separate offense of larceny of military property of the United States until the effective date of the 1984 Manual For Courts–Martial (MCM). The 1984 MCM included a provision to increase the maximum punishment when the property the subject of the larceny is military property of the United States. MCM, Part IV, paragraph 46e (1984).

4. The pertinent portion of 1949's Article of War 94 is worded the same as the 1916 and 1920 Article of War 94 and Article 60 of the 1874 Articles of War. *Military Laws of the United States*, at 164, 194, 8th Ed. (1939); Articles of War, ch. 5, 18 Stat. 235 (1874).

not "military property." Judge Cook identified two criteria necessary for property of the United States to be entitled to the special protective status of "military property:"

> [I]t is either the uniquely military nature of the property itself, or the function to which it is put, that determines whether it is 'military property' within the meaning of Article 108.

*Schelin,* 15 M.J. at 220.

Using the *Schelin* criteria, the Court of Military Appeals in *United States v. Simonds,* 20 M.J. 279 (C.M.A.1985) held that a camera purchased with appropriated funds by the Navy Supply Corps for sale in a ship's store was "military property of the United States." 20 M.J. at 280. Recognizing that "a camera ... is not normally considered to be an item of military (or naval) necessity," Judge Cox in *Simonds* focussed on the uniquely military health, morale, and welfare function served by the ship's store:

> The ship's store is a part of naval history and tradition; if the Navy chooses to stock therein cameras and stereo equipment purchased with government funds for the morale and welfare of its men at sea, then such items are indeed, 'military property'....

20 M.J. at 281.

This court's recent opinion in *United States v. Ford,* 30 M.J. 871 (A.F.C.M.R. 1990), dealt with theft of billeting funds. The majority noted the distinction drawn by the Court of Military Appeals between property purchased by an appropriated fund activity (the camera found to be military property in *Simonds* ) and property owned by a nonappropriated fund instrumentality (the AAFES property found not to be military property in *Schelin* ). Concluding that nonappropriated billeting funds were not "military property," the majority observed:

> ... the stolen funds were not of an unique military nature or put to a military function that would entitle them to the special protection accorded 'military property of the United States.' *Si-*

*monds,* 20 M.J. 279; *Schelin,* 15 M.J. 218.

30 M.J. at 874. Concurring in the result in *Ford,* Chief Judge Hodgson and Judge Pratt indicated they "... would go farther and hold that while money buys weapons and material which become military property, the money itself does not attain that status." 30 M.J. at 875.

Today, we take a step beyond *Ford,* concluding that the appropriated money Thomas is convicted of stealing was not "military property of the United States." However, we do not go so far as to say that money can *never* be military property.

The moving and temporary lodging allowances in issue in this case are not unique to the military. Nor are they put to any military function that entitles them to the special protective status (a doubling of the available maximum confinement) accorded "military property" under Article 121, UCMJ. Ordinarily, it is the property it purchases, not the money itself, which has the "uniquely military nature" or will be put to a "function" which merits its inclusion in the specially-protected category of "military property." *See Ford,* 30 M.J. at 876 (Pratt, J. concurring opinion) and *Schelin,* 15 M.J. at 220.

To decipher legislative intent regarding the general treatment of money as a class of property, perhaps we can draw an analogy to the offenses of making and presenting false or fraudulent claims under Article 132, UCMJ, 10 U.S.C. § 932, noting that these Article 132 offenses are factually similar to the crimes Thomas committed. The maximum punishment for making and presenting false or fraudulent claims is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for five years. The same maximum punishment applies to larceny of U.S. property *other than* military property of a value of more than $100 under Article 121, UCMJ. MCM, Part IV, para. 46e(1)(d) and para. 58(e)(1).

At the very least, the drafters' intent regarding the "property" status of money under UCMJ Article 121 is ambiguous. Since criminal statutes must be strictly con-

strued, such ambiguity must be resolved in favor of the accused. *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973), *Schelin*, 15 M.J. at 220.

For the reasons listed above, we find that the military judge erred in denying defense counsel's motion to strike "military property" from the four specifications of Charge I. Had the defense motion been granted, the members would have been told that Thomas could be sentenced to up to 25, rather than 45 years confinement for the offenses to which he pleaded guilty.

### III

■ Having examined the record of trial, the assignments of error, and the government's reply, we approve the findings of guilty after modifying the four larceny specifications by striking "military property" from each. We are satisfied that we can fairly determine the sentence that would have been adjudged absent the improper instruction regarding maximum confinement. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). In our reassessment, we are convinced the approved sentence is no greater than that which would have been imposed if the defense counsel's motion had been granted, taking into account the affirmed findings of guilty of four specifications of larceny totalling more than $5,600.00, and of a false official statement designed to obtain an unauthorized identification card. We further find the reassessed sentence appropriate. Article 66(c), UCMJ 10 U.S.C. § 866(c). Accordingly, the findings of guilty, as modified, and the sentence are

AFFIRMED.

Senior Judge LEONARD and Judge RIVES concur.