**UNITED STATES**

v.

**Timothy R. SPRADLIN, 402 86 5141, Postal Clerk First Class (E–6), U.S. Navy.**

**NMCM 91 0661.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 Dec. 1990.

Decided 9 Sept. 1991.

Maj. G.S. Warner, USMC, Appellate Defense Counsel.

Lt. Col. John P. Cotter, USMCR, Appellate Defense Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

LCDR Frederic E. Matthews, JAGC, USNR–R, Appellate Government Counsel.

Before MITCHELL, FREYER and HOLDER, JJ.

FREYER, Judge:

The appellant was convicted, in accordance with his negotiated pleas, of absence without leave, as a lesser-included offense of desertion, from 2 August to 6 September 1990; theft of $17,152.00 in postal funds from the proceeds of the sale of postal money orders on 1 August 1990; and wrongful appropriation, as a lesser-included offense of larceny, of a rental car on 1 August 1990, which he used to leave the

vicinity of his ship and abandoned at an airport for more expeditious transportation. For all this, he was sentenced by the military judge to reduction to pay grade E–3, confinement for twelve months, a bad-conduct discharge, and a fine. The military judge recommended that the bad-conduct discharge and reduction below pay-grade E–4 be suspended, but the convening authority approved the sentence as adjudged. The amount of the fine is reflected in the announcement of the sentence as $17,-172.00, whereas, later on the same page of the transcript, the military judge is reported as saying to the appellant: "I gave you a fine of $17,152.00...." We view it as more likely that the announcement of the sentence is reported in error, since the amount in the latter statement corresponds to the amount of the theft. Rather than to return the case to the military judge for resolution, in the interests of judicial economy, we shall cure the ambiguity in our own disposition of the case.

In response to our specified issues,[1] we have been provided with excellently researched and reasoned briefs from counsel for both sides, and we have given them most careful consideration.

■ Article 108, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 908, is divided into three categories of improper dealings with military property: (1) sells or otherwise disposes of; (2) willfully or through neglect damages, destroys, or loses; and (3) willfully or through neglect suffers to be lost, damaged, destroyed, sold, or wrongfully disposed of. Now joined in a single article, these categories appear to have different antecedents in the Articles of War.

Article of War 15 provided: "Any officer who, wilfully or through neglect, suffers to be lost, spoiled, or damaged, any military stores belonging to the United States, shall make good the loss or damage, and be dismissed from the service."

Article of War 16 provided: "Any enlisted man who sells, or wilfully or through neglect wastes the ammunition delivered out to him, shall be punished as a court-martial may direct."

Article of War 17 provided: "Any soldier who sells or, through neglect, loses or spoils his horse, arms, clothing, or accoutrements, shall be punished as a court-martial may adjudge, subject to such limitation as may be prescribed by the President by virtue of the power vested in him."

That none of the kinds of military property enumerated in the above-quoted Articles of War includes money is evident from the plain meaning of the terms used and, with respect to the term "stores," was expressly decided in interpretations of Article of War 8. *See* Winthrop, *Military Law and Precedents,* Second Edition, 1920 Reprint, 556 (footnote 19). Of Article of War 15, Colonel Winthrop had this to say:

The original Article—No. 1 of Sec. XII of 1776, and No. 36 of 1806—of which the present provision was a part, denounced also the offences of unauthorized selling, embezzlement and misapplication of military stores. But, as to this portion, the Article was practically superseded by the subsequent Act, "to prevent and punish frauds upon the Government of the United States," of March 2, 1869, c. 67, which is now, by the Revision of 1874, incorporated with the code as Article 60.

*Id.* at 558–59.

A similar reference to Article of War 60 is found in the discussion of Article of War 17. Article of War 60 is similar in many respects to the present Article 132,

1. I. CAN UNITED STATES CURRENCY BE CONSIDERED "MILITARY PROPERTY"?

II. EVEN IF THE ANSWER TO ISSUE I IS IN THE AFFIRMATIVE, CAN THE FINDING OF "MILITARY PROPERTY" BE SUSTAINED AS TO THAT UNDEFINED PORTION OF THE CURRENCY THAT WAS OWNED BY THE U.S. POSTAL SERVICE BUT IN THE POSSESSION OF THE U.S. NAVY?

III. IF THE ANSWER(S) TO EITHER OR BOTH OF THE FOREGOING SPECIFIED ISSUES WOULD RESULT IN A REDUCTION OF THE MAXIMUM CONFINEMENT FROM THIRTEEN TO EIGHT YEARS, WOULD THE APPELLANT BE ENTITLED TO ANY RELIEF AND, IF SO, WHAT RELIEF?

U.C.M.J., 10 U.S.C. § 932, but it also contained the following:

"Any person in the military service of the United States who ... steals, embezzles, knowingly and willfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, subsistence stores, *money*, or other property of the United States, *furnished or intended for the military service thereof* ... [s]hall, on conviction thereof, be punished by fine or imprisonment, or by such other punishment as a court-martial may adjudge.

[Emphasis supplied.]

A comparison of these provisions, and an examination of Colonel Winthrop's discussion thereof, reveal a legislative intent to exclude money from the types of military property involved in offenses resulting from mere neglect or suffering, but to include money in the types of military property involved in offenses resulting from willful misconduct tantamount to theft or fraud. The same intent appears to have been propagated into the later version of the Articles of War, and the Articles for the Government of the Navy, as quoted in *United States v. Schelin,* 15 M.J. 218 (C.M.A.1983).

In joining willful offenses with negligent ones in Article 108, U.C.M.J., and applying them to "any military property of the United States," the Congress appears to have adopted the broad definition of military property reflected in Article of War 60, quoted above, and in its successor Article of War 94 and Article for the Government of the Navy 14, quoted in *Schelin.* We have noted with due deference the views of Chief Judge Hodgson and Judge Pratt in *United States v. Ford,* 30 M.J. 871, 875 (A.F.C.M.R.1990), for arguably their views are compatible with cases such as *United States v. Hayes,* 8 U.S.C.M.A. 627, 25 C.M.R. 131 (1958), reflecting the fungible character of money, as distinguished from what money can buy. Since, however, Article of War 60 and its successors explicitly included "money" among the kinds of

"property of the United States furnished or intended for the military service thereof," we are compelled to conclude that, under the right circumstances, money may be alleged as military property, and that the first specified issue should be answered in the affirmative.

■ Paragraph 32c(1), Part IV, Manual for Courts–Martial, United States, 1984, defines military property as "all property, real or personal, owned, held, or used by one of the military departments of the United States." Since, as to matters of substantive law, the Manual for Courts–Martial, United States, is merely interpretive of the U.C.M.J., the word "held" must be viewed in an interpretive, rather than a legislative, capacity. Considering that the phrase "military property" is derived from the former statutory phrase "property of the United States furnished or intended for the military service thereof," we think that the word "held," as used in the current and previous editions of the Manual for Courts–Martial, United States, means, if not actually owned, at least held in some beneficial sense, such as with the right to use for some military purpose, not merely held for the sole purpose of paying over to some non-military entity.

We recognize that, as asserted in the Government brief, any property in the possession of the United States for any purpose, even in a completely non-beneficial capacity, may be alleged in a larceny specification as being the property "of" the United States, but we do not see a connection between that rule and a definition of "military property." The appellant, on the other hand, in opposing the Government's argument that the Navy's *ex contractu* obligation to make good any missing funds to the U.S. Postal Service makes such funds military property, draws an apt analogy to stolen household goods, which do not become military property merely because the Government may be obligated to reimburse the service member for their loss. The same would be true of other property of service members and even foreign nationals under a variety of personnel and foreign claims acts and regulations. It

appears that another apt analogy can be drawn to the long line of U.S. Supreme Court cases dealing with the immunity of those who contract with governmental agencies from taxation by other governmental agencies on the income derived from such contracts. *See generally South Carolina v. Baker*, 485 U.S. 505, 515–527, 108 S.Ct. 1355, 1362–68, 99 L.Ed.2d 592 (1988). In those cases, it has been held to be the technical *incidence* of the tax, vice its actual economic burden, which determines its constitutionality. Likewise, we think that it is the nature of property at the time it is lost, damaged, destroyed, or stolen, as the case may be, which determines its status as military property, *vel non*, not the source of funds from which the Government may become obligated to reimburse or hold harmless.

Similarly, we are unconvinced by any analogy to the situation leading to the decision in *United States v. Simonds*, 20 M.J. 279 (C.M.A.1985). While the operation of a shipboard post office is undoubtedly related to morale, the funds in this case not only were not funds appropriated to the Department of Defense nor to any component thereof, but they were also not used to acquire inventory for resale (blank postal money orders apparently being provided by the U.S. Postal Service on a consignment basis, as distinguished from being purchased by the ship as inventory for resale), nor in any way to defray the costs of operating the post office, nor to accomplish any other arguably military purpose. On the contrary, at the time the funds were stolen, any morale-related transactions in which they may have been involved had long since ceased, and no further morale-related transactions involving such funds were contemplated.

On the basis of this analysis, we hold that the postal funds stolen by the appellant, which were apparently held by the U.S. Navy under no form of beneficial ownership or possession, but solely for the purpose of paying the same over to the U.S. Postal Service, were not "military property of the United States."

Even so, this case, like the *Schelin–Simonds* duo, points up the artificiality of distinctions between military and non-military property scarcely justifying, in many types of situations, a one hundred per cent disparity in imposable confinement. The pleadings reflect that postal money order revenues are, for the sake of convenience, eventually commingled with general revenues and replaced with a disbursing officer's check for transmission to the U.S. Postal Service. In this case, the appellant apparently got to them while they were still clearly earmarked as postal money order revenues, but determining their status after they were already commingled with appropriated funds would pose unique difficulties, giving still further credence to the views of Chief Judge Hodgson and Judge Pratt in *United States v. Ford*.

In addition to obliging us to set aside a portion of the finding of Charge II, Specification 1, our resolution of the military property issue necessitates consideration of the effect that the appellant's misapprehension of the maximum punishment may have had on his pleas, and the court's like misapprehension may have had on the sentence. The difference is between thirteen and eight years; the appellant negotiated a pretrial agreement for mitigation of a dishonorable discharge to a bad-conduct discharge and suspension of confinement over twenty months; he received only a bad-conduct discharge and twelve months' confinement from the court.

Notwithstanding the escalation in the maximum punishment for military property, we are convinced that the allegation of military property was insignificant in relation to the real aggravating circumstance in this case, which was the theft of postal funds by a first-class postal clerk. The grave breach of trust and duty implicit in such a crime was, in our opinion, what defined the seriousness of the case and the appellant's assessment of his exposure, not the allegation of military property, which was not even argued by the trial counsel. Consequently, although, on a percentage basis, the difference between eight and thirteen years looks significant, we are con-

vinced, on the basis of the realities of this case, that neither the pretrial agreement, the pleas, nor the sentence was affected, and we, ourselves, are completely satisfied that the approved sentence is appropriate even after elimination of "military" from the finding in question. *See United States v. Hunt,* 10 M.J. 222 (C.M.A.1981).

The findings of guilty are affirmed, except as to the word "military" in the finding of Charge II, Specification 1, so much thereof being set aside; and, upon reassessment, the sentence is affirmed, less so much of the fine as is in excess of $17,152.00, which, if it was adjudged at all, is set aside.

Senior Judge MITCHELL and Judge HOLDER concur.