REED, Senior Judge:
In this case, we are again called upon to decide what constitutes military property (as opposed to government property) for purposes of prosecution under Article 108, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 908.[1] The distinction is important. Conviction under Article 108, UCMJ, carries *848 a greater maximum punishment than does conviction under Article 109, UCMJ, 10 U.S.C. § 909, which deals with the waste, spoilage, or destruction of property other than military property of the United States.
Appellant was tried by general court martial, with members, and in accordance with his pleas, was convicted of four specifications of falsifying an official record in violation of Article 107, UCMJ, 10 U.S.C. § 907. Contrary to his pleas, appellant was also convicted of six specifications of negligent dereliction of duty, two additional specifications of falsifying an official record, one specification of the willful disposition of military property without authority, one specification of suffering the wrongful disposition of military property through neglect, and one specification of stealing military property, in violation of Articles 92, 107, 108, and 121, UCMJ, respectively, 10 U.S.C. §§ 892, 907, 908, and 921. Appellant was sentenced to three years’ confinement, total forfeiture of all pay and allowances, reduction to pay grade E-l, and a bad-conduct discharge. The convening authority approved the sentence and, except for the bad-conduct discharge, ordered it executed.
FACTS
On 25 September 1989, appellant was appointed evidence custodian for Military Police Headquarters, Marine Corps Base, Camp Lejeune, North Carolina. On 28 April 1990, a member of the Criminal Investigation Division aboard Camp Lejeune, Corporal (Cpl) L, conducted a search of appellant’s residence during the investigation into the possession of drug paraphernalia by one of appellant’s roommates. During the search, this investigator discovered and seized several items with evidence tags on them, including a camouflage gym bag, two utility caps, and two blue baseball caps. Appellant then handed brass knuckles (with evidence tape on them) and a gold chain to Cpl L, along with a chain of custody document for the chain. Sometime later, Cpl L discovered that pornographic magazines she had seen at appellant’s residence earlier were also from the evidence locker, although appellant had indicated that they were his. Cpl L returned to appellant’s residence. After a discussion with appellant, appellant surrendered the magazines; an evidence tag fell out from among them. Appellant also surrendered a missing bottle of cologne which he retrieved from his briefcase.
As a result of the above discoveries, appellant was relieved as custodian on 28 April 1990 and an inventory of the locker was undertaken. The inventory and a search of the evidence locker revealed that money and other items were missing and that log entries had been falsified. Based on these discoveries, appellant was charged with dereliction of duty, wrongful disposition of military property, and theft of military property.
ISSUES
In his first summary assignment of error appellant alleges that
THE MILITARY JUDGE ERRED IN FINDING U.S.- CURRENCY, BRASS KNUCKLES, A .38 CALIBER REVOLVER, .38 CALIBER ROUNDS, A NYLON GYM [BAG], TWO BLUE CAPS, TWO UTILITY COVERS, ONE BOTTLE OF COLOGNE, AND 12 SEXUALLY EXPLICIT MAGAZINES MILITARY PROPERTY OF THE UNITED STATES MERELY BECAUSE THE ITEMS WERE POTENTIAL EVIDENCE IN MILITARY JUDICIAL PROCEEDINGS.[2] See United States v. Spradlin, 33 M.J. 870 (N.M.C.M.R.1991); United States v. Schelin, 15 M.J. 218, 220 (C.M.A.1984).
In conjunction with this assignment of error, this Court specified the following additional issue:
IS THE CHARACTERIZATION OF AN ITEM AS MILITARY PROPERTY A QUESTION OF FACT, AND IF SO, DID THE MILITARY JUDGE ERR BY INVADING THE PROVINCE OF THE MEMBERS TO DETERMINE FACTU *849 AL ISSUES WHEN HE INSTRUCTED THE MEMBERS THAT MAINTAINING ITEMS OF EVIDENCE IS AN INDISPENSABLE PART OF THE [MILITARY COURT] SYSTEM, AND THAT IF THE ITEMS IN QUESTION WERE SURRENDERED TO THE MILITARY FOR USE AS EVIDENCE, THEY MAY CONCLUDE THAT THE ITEMS ARE MILITARY PROPERTY.
LAW
We start our discussion by noting that the Manual for Courts-Martial (MCM), United States, 1984, part IV, paragraph 32c(l) provides the following guidance of what constitutes military property.
Military property is all property, real or personal, owned, held, or used by one of the armed forces of the United States. It is immaterial whether the property sold, disposed, destroyed, lost, or damaged had been issued to the accused, to someone else, or even issued at all. If it is proved by either direct or circumstantial evidence that items of individual issue were issued to the accused, it may be inferred, depending on all the evidence, that the damage, destruction, or loss proved was due to the neglect of the accused. Retail merchandise of service exchange stores is not military property under this article.
In Schelin, the Court of Military Appeals noted that the term “military property” can have at least two meanings.
In a narrower sense, it could refer to property having some unique military nature or function, such as tanks, cannons, or bombers, In a broader sense, it could refer to any property belonging to or under the control of the military. The Navy Court of Military Review has adopted the latter, broader definition. The Army and Air Force Courts of Military Review, on the other hand, have generally adopted the former, narrower definition.
Schelin at 220 (citations omitted). That Court then went on to hold that
In the absence of any Congressional guidance, it seems most likely to us that “military property” was selected for special protection due to its role in the national defense. In other words, it is either the uniquely military nature of the property itself, or the function to which it is put, that determines whether it is “military property” within the meaning of Article 108. We do not suggest that it is only tanks, cannons, or bombers that merit the protection of Article 108, for many items of ordinary derivation are daily put to military use. However, retail merchandise of the Army and Air Force Exchange Service does not seem to fit into that specially-protected category.
Id (footnote omitted). Our reading of Schelin convinces us that normally a determination of whether or not items are military property is a matter for the determination of the court-martial members. See Militai-y Judges’ Benchbook, Department of the Army Pamphlet 27-9, May 1982, paragraph 3-66, page 3-139. However, our reading of Schelin also convinces us that as a matter of law, retail merchandise of the Army and Air Force Exchange Service is not military property.
This troublesome dichotomy caused this Court to specify the above issue concerning the military judge’s instruction that made us question whether he had invaded the province of the court-members. We now determine that he did not. Our reading of that instruction tells us that the judge indicated only that the members could, but were not required to, find that items were military property if “the items in question were surrendered to the military for use as evidence.” We believe beyond question that the military judge was correct in informing the members that “maintaining items of evidence is an indispensable part of the [military] court system.” [3] The military judge’s instruction allowed the members to find certain predicate *850 facts from which they were permitted, if they desired, to infer other facts. It is clear that the military judge’s instruction did not deprive the members of their factfinding role. Cf County Court of Ulster Cty. v. Allen, 442 U.S. 140, 165, 99 S.Ct. 2213, 2229, 60 L.Ed.2d 777 (1979) (where state court trial judge’s instructions made it clear that a presumption that presence of firearm in automobile was evidence of its illegal possession by all occupants was merely a part of prosecution’s case, giving rise to permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that presumption could be ignored by jury even if there was no affirmative proof offered in rebuttal, upheld as rational).
We now turn to appellant’s first assignment of error and conclude that the members did not err in determining that the items specified were military property of the United States because the items had been stored for use as potential evidence in military judicial proceedings.
Although the UCMJ does not define military property, the MCM does, describing it as “all property, real or personal, owned, held, or used by one of the armed forces of the United States.” MCM, United States, 1984, part IV, paragraph 32c(l) (emphasis added). As noted earlier, the Court of Military Appeals has given further guidance on the nature of military property holding that “it is either the uniquely military nature of the property itself, or the function to which it is put that determines” if the item is military property. Schelin at 220.
In Spradlin this court stated:
Considering that the phrase “military property” is derived from the former statutory phrase “property of the United States furnished or intended for the military service thereof,” we think that the word “held,” as used in the current and previous editions of the Manual for Courts-Martial, United States, means, if not actually owned, at least held in some beneficial sense, such as with the right to use for some military purpose, not merely held for the sole purpose of paying over to some non-military entity.
Spradlin at 872. Whether or not the property is held in a “beneficial” sense is usually a question of fact, but at times may be one of law. See Schelin. Here, we believe that whether the items were held by the Government in a “beneficial” sense was properly a question posed by the military judge to the members.
The Preamble to the MCM, Part I, Paragraph 3, provides that “[t]he purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States.” The fact that had to be proved at appellant’s court-martial was that the property appellant stole or misappropriated was collected and stored in the course of military investigations. Based on that finding, the members could, but were not required to, conclude that the property appellant stole was military property. The connection is obvious. It is based on the critical role that properly safeguarded evidence has in the military justice system and the importance of that system to the health, welfare, and morale of the military personnel.
If a screw or nut is stolen or improperly disposed of, a weapon may malfunction. A screw or nut standing alone is not normally considered military property; however, when considering the use to which the item is put, the item may be transmuted into military property. Likewise, if chain-of-custody procedures are called into quéstion, the validity of use of the evidence held by a military custodian becomes suspect causing a failure in the military justice system. Here, records regarding some of the evidence indicate the evidence was returned to the proper owner when in fact the appellant/eustodian had retained it for his own use. Some evidence was being held for prosecutorial use, although it is not clear that all of the evidence was to be used at actual prosecutions. Nevertheless, all of the evidence, despite in some instances its unusual nature, was being “held” by the Government, either for future use, or as the result of past use but awaiting proper disposal. Falsifying any of the records and improperly disposing of such items called into question the validity of custody procedures *851 and potentially made evidence ineligible for use at courts-martial or other disciplinary proceedings. Thus we conclude that the objects being held remain military property until properly disposed of,[4] because of the “beneficial” use made of such items by the military.
The findings and sentence, as approved on review below, are affirmed.
Senior Judge JONES and Judge LAWRENCE concur.

. Article 108 — Military property of the United States — sale, loss, damage, destruction, or wrongful disposition
a. Text.
“Any person subject to this chapter who, without proper authority—
(1) sells or otherwise disposes of;
(2) willfully or through neglect damages, destroys, or loses; or
(3) willfully or through neglect suffers to be lost, damaged, destroyed, sold, or wrongfully disposed of; any military property of the United States, shall be punished as a court-martial may direct.”
Manual For Courts-Martial, United States, 1984, Part IV, ¶32.

. It is unclear from the record of trial whether all this evidence was being held for use at future prosecutions or was related to proceedings, whether court-martial or nonjudicial, previously held, or was evidence in which no proceedings had resulted and, for one reason or another, had not been returned to the owner.

. Such information is akin to the military judge taking judicial notice of such a fact and then reporting that fact to the fact-finder as accepted. See United States v. Needham, 23 M.J. 383 (C.M.A.1987). Additionally, we note that trial defense counsel did not object to the instruction as given. Failure to object constitutes waiver, absent plain error, which we do not believe to be present. See Rule for Courts-Martial (R.C.M. 905(e)).

. A similar analogy could be made to other objects that are more clearly military property objects, such as tanks, ships, or other munitions. Such items could be declared excess by the U.S. Government and made available for proper disposal, including sale, to foreign governments. However, until actually disposed of, such could be recalled for actual military use. Thus, until properly disposed of, they remain military property.