**UNITED STATES, Appellant,**

v.

**Airman Cheryl M. SCHELIN, FR 566–41–3541, United States Air Force, Appellee.**

**CMR No. ACM S25219.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 Feb. 1981.

Decided 9 Oct. 1981.

Certificate for Review 25 Sept. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens, Captain G. Michael Lennon and Captain Teresa J. Stremel, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before MILES, KASTL and MILLER, Appellate Military Judges.

## DECISION

KASTL, Judge:

We hold that retail merchandise of the Army and Air Force Exchange Service (AAFES) is not "military property" within the meaning of Article 108, Uniform Code of Military Justice. We also set aside, as fatally defective, a separate charge and specification which attempts to allege concealment of stolen property.

Consistent with her pleas, the accused was convicted by special court-martial of absence without leave, wrongful disposition of military property, and concealing stolen property, violations of Articles 86, 108, and 134, Code, *supra*. The approved sentence extends to a bad conduct discharge, confinement at hard labor for two months, forfeiture of $250.00 per month for two months, and reduction to airman basic.

## I

Charges of wrongful disposition of military property and concealment of stolen property arose from the same factual setting. A Marine friend of the accused and three other males asked her to store two bulky laundry bags in her barracks room locker. She states that she did not know what the two laundry bags contained, but agreed to the proposal. The visitors then put the bags in her locker and locked them up. The next day, her Marine friend and the others returned and opened the bags in her presence. One bag contained cameras and camera lenses; the other contained wrist watches, a portable radio, and a portable cassette player.

After the accused observed price tags on several items and watched her visitors wipe their fingerprints off the items, she realized that they must be stolen. When the men left, the remaining items were put back in the laundry bags and returned to the accused's locker. Her friend promised the men would return, but they never did. After a day or two, the accused gave the laundry bags to another airman. The items in both bags were property of the AAFES, a nonappropriated fund instrumentality of the United States Government. From the description of the property in the record, we find it was retail merchandise regularly offered for sale by the Exchange to members of the armed forces.

## II

■ The defense argues that nonappropriated fund property is not *military* property within the meaning of Article 108.[1]

---

1. The pertinent portion of Article 108, Uniform Code of Military Justice, reads:
   *Art. 108. Military property of United States—Loss, damage, destruction or wrongful disposition.*
   Any person subject to this chapter who, without proper authority—
   \* \* \* \* \* \*

   (3) willfully or through neglect suffers to be lost, damaged, destroyed, sold or wrongfully disposed of; any military property of the United States, shall be punished as a court-martial may direct.
   The proof required by Paragraph 187, Manual for Courts-Martial, 1969 (Rev.) provides, *inter alia*, that: "the property was military prop-

Thus, the defense contends, the accused's plea of guilty to this offense was improvident.

We agree. *United States v. Underwood,* 41 C.M.R. 410 (A.C.M.R.1969); *United States v. Geisler,* 37 C.M.R. 530 (A.B.R. 1966); *United States v. Deevers,* 26 C.M.R. 670, 672 (A.B.R.1958). See also *United States v. Rivers,* 3 C.M.R. 564, 565–566 (A.F.B.R.1962) and *United States v. Rockey,* 22 C.M.R. 372 (A.F.B.R.1956). The Navy position is contra. *United States v. Harvey,* 6 M.J. 545 (N.C.M.R.1978), *pet. denied,* 6 M.J. 193 (C.M.A.1979) and *United States v. Mullins,* 34 C.M.R. 695 (N.B.R.1964).

"Military property" is a term which must be construed in the broad sense. As the Air Force Board of Review eloquently stated in *United States v. Foust,* 20 C.M.R. 907, 909 (A.F.B.R.1955) the term covers:

> . . . basically all property owned or held by the United States Air Force . . . The sole function of the Department of the Air Force is a military one. All property held or used by it from the meanest paper clip to the mightiest bomber has a mediate or immediate military use.

Giving full weight to this position, our research nevertheless reveals no historical evolution under Article 108 or its predecessors in which the property of an Exchange, sutler, post trader, canteen, or the like was considered to be United States military property. Accordingly, we agree with the Army Board of Review's analysis that "historically property of nonappropriated funds was not considered to be *military* property of the United States." *United States v. Geisler, supra,* at 532 (emphasis added). We believe that a clearcut exposition of this historical position appeared in the Manual

for Courts-Martial, U.S. Air Forces, 1949, which cautioned that the relevant predecessor Article of War "does not include post exchange, company or officer's club funds or property on money appropriated for other than the military service."

In 1951, the above language was deleted in the new Code and the topic generally was reworked. We do not reason that the new language was intended, *sub silentio,* to overrule contrary historical precedent; had the drafters intended the gamut of Exchange retail items—watches, cameras, Waterford crystal, children's toys or gardening tools—to now be considered "military property" under Article 108, clearly they would have said so.[2] Yet nothing in the legislative history suggests so sweeping a change. See Legal and Legislative Basis, Manual for Courts-Martial, U.S., 1951, at 264–265. Our position is strengthened by the fact that those who addressed Article 108 offenses under the present Code in 1956, 1962, and 1966 discerned no turnabout from the traditional position. See, for example, *United States v. Rivers, United States v. Geisler,* and *United States v. Rockey,* all *supra.* See also *United States v. Waddell,* 23 C.M.R. 903, 906 (A.F.B.R. 1957).

Finally, we note that the Manual for Courts-Martial, 1969 (Rev.), paragraph 187*c* provides guidance as to inferences which may be permissibly drawn in a given case when the question is whether the prosecution has provided sufficient *proof* the item was indeed military. The proper employment of the section appears in such cases as *United States v. Waddell, supra.* We find the paragraph of little value in resolving the threshold issue of whether Exchange property is military property *vel non.*

---

erty of the United States." The discussion provides that:

> Although there may be no direct evidence that the property in question was military property of the United States, circumstantial evidence that the property was of a kind and type issued for use in, or furnished and intended for, the military service of the United States might, together with other proved circumstances, warrant the court in inferring that it was such military property of the United States.

**2.** We discern no attempt to repudiate the former understanding of what constituted military property. To the contrary, we believe the newer language cut down excess verbiage and was simply designed to encompass all the services. That the framers of the 1951 Manual intended there to be a category of *nonmilitary* Government property is shown by the legislative history of Article 109. See *United States v. Suthers,* 22 C.M.R. 787, 789 (A.F.B.R. 1956).

To summarize: At the time of the offense, the watches, cameras and the like were not military property of the United States. Nor were these items furnished to or intended for use by the United States military services, as opposed to its members. Analysis of legal history and precedent persuades us that AAFES nonappropriated fund ownership, as presently operating, is an insufficient basis upon which to sustain this conviction for wrongful disposition of military property under Article 108.[3] See also *United States v. Ranguette*, 79 B.R. 235, 262–263 (1948) and *United States v. Mascarella*, 62 B.R. 55, 58 (1946).

We are not holding here that the camera, watches, and the like did not belong to a Government instrumentality—the Exchange. That they so belonged is obvious. However, Article 108 does not cover all government-owned property. It deals only with *military* property of the United States. *United States v. Geisler, supra*, at 532.[4]

### III

■ Appellate defense counsel also assert that the specification attempting to allege unlawful concealment of stolen property is defective.[5] We agree. There is no allegation that the property was stolen and that the accused knew it was stolen.[6] Both are essential elements of the offense of receiving or concealing stolen property. Manual for Courts-Martial, 1969 (Rev.), paragraphs 28a, 213f(14).

Accordingly, we hold this specification fatally defective because it does not contain

the elements of the offense intended to be charged, either directly or by fair implication. See *United States v. Brice*, 17 U.S.C.M.A. 336, 38 C.M.R. 134 (1967) and *United States v. Petree*, 8 U.S.C.M.A. 9, 23 C.M.R. 233 (1957). This defect is not waived by a guilty plea and may be raised at any time. *United States v. Koepke*, 18 U.S.C.M.A. 100, 39 C.M.R. 100 (1969); *United States v. Fout*, 3 U.S.C.M.A. 565, 13 C.M.R. 121 (1953). The finding of guilty of Charge II is set aside and that charge is dismissed.

■ Reassessing the sentence on the basis of the remaining findings of guilty, we find appropriate only so much of the sentence as provides for confinement at hard labor for two months.

As modified, the findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge, concurs.

MILES, Senior Judge, concurring in part and dissenting in part:

For the reasons given in the majority opinion, I agree that the attempt to allege unlawful concealment of stolen property was fatally defective. I disagree with the conclusion of the majority that AAFES merchandise *cannot* be "military property" under Article 108 of the Uniform Code.

The term "military property" is not defined in the Uniform Code or in the Manual for Courts-Martial. Accordingly, to interpret this term as it applies to retail mer-

---

3. The Exchange is prohibited from selling or furnishing property to any United States military service. See AFR 127–14, Army and Air Force Exchange Service Operating Policies, paragraph 27a (15 November 1968). Although organized as a joint command of the Army and Air Force and authorized to use military facilities, the Exchange Service is a separate Government instrumentality, one in which no portion of funds appropriated for the United States armed forces can be commingled with nonappropriated funds.

4. In the face of Army Court of Military Review precedents, a contrary decision would lead to this anomaly: If a soldier and an airman both are charged with Army and Air Force Exchange Facility violations under Article 108,

the soldier would go free and the airman would be punished.

5. The specification read, in pertinent part, as follows:

In that [the accused] did, at Kadena Air Base, Japan . . . unlawfully conceal . . . the property of the Army and Air Force Exchange Service-Pacific.

6. The model specification reads the same as the drafted specification in this case *except* at the end it includes the allegation "which property, as he, the said ———, then well knew, had been stolen." Manual for Courts-Martial, 1969 (Rev.), App. 6c, form 179.

chandise of AAFES, it is necessary to trace the historical background of Article 108.

Prior to the Uniform Code of Military Justice, the Army was regulated by the Articles of War. At one time, the relevant section of the Sixtieth Article of War read as follows:

> Any person in the military service of the United States ... [w]ho steals, embezzles, knowingly and willfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, subsistence stores, money, or other property of the United States, furnished or intended for the military service thereof. . . .

Winthrop's, *Military Law and Precedents*, at 697–698, 2nd ed. (1920).

By the time the Manual for Courts-Martial, 1949, was published, the various portions of the Sixtieth Article of War had become Articles of War 83, 84 and 94. Article 94h prohibited the stealing, larceny, embezzlement, misappropriation, misapplication, sale and wrongful disposition of government property in language similar to the previous Article of War 60. The comment accompanying Article of War 94h explains:

> to be the subject of an offense within this article, the property must be that "of the United States furnished or intended for the military service thereof." *This does not include post exchange, company or officer's club funds or property or money appropriated for other than the military service.* [Emphasis added].

Manual for Courts-Martial, U.S. Air Forces, 1949, at 252.*

When the Uniform Code of Military Justice was adopted, it used the term "military property" in Article 108. The former term "property of the United States furnished or intended for the military service" used in Article of War 94h was discarded. The language quoted above from the 1949 Manual including the reference to post exchange property was deleted. It has not

surfaced again in more recent editions of the Manual. Instead, the current Manual, using language similar to that of the 1951 Manual, states:

> Although there may be no direct evidence that the property in question was military property of the United States, circumstantial evidence that the property was of a type and kind issued for use in, or furnished and intended for, the military service of the United States, might, together with other proved circumstances, warrant the court in inferring that it was such military property of the United States.

MCM, 1969 (Rev.), paragraph 187.

The foregoing history indicates that the term "military property" is broad enough to cover property furnished or intended for the military service although it *belongs* to a nonappropriated fund rather than the armed forces, *per se*. The deletion of the restrictive qualification referring to "post exchange, company or officer's club funds" contained in the 1949 Manual implies that the drafters did not agree with it and intended to repudiate it. In this case, none of the trial participants thought the issue of sufficient import to even litigate it. Under the circumstances, I find it inappropriate to declare that the AAFES merchandise described in this case could *not* be military property simply on the basis of ownership.

Moreover, the term "military property" should be interpreted in a broad sense when dealing with a violation of Article 108. *United States v. Foust*, 20 C.M.R. 907 (A.F. B.R.1955). Having been intended for military members, it was proper for the accused to admit, and for the trial judge to find, that it was furnished and intended for the military service and was therefore military property. Because AAFES merchandise is intended and furnished for the use of the members of the armed forces, its wrongful disposition has a direct adverse impact on the morale and welfare of the military services. I agree with a Navy Board of Review on this issue when it reasoned:

---

* The language in the Manual for Courts-Martial, U.S. Army, 1949, is identical.

To hold any differently would, in our opinion, result in elevating form over substance. Unquestionably, the Navy Exchange is an instrumentality of the Government performing a function which is an integral part of the armed forces. The object of the exchange is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at prices they can afford. It is superfluous to argue that the exchanges do not have a direct impact upon morale in the armed forces. [Citation omitted].

*United States v. Mullins*, 34 C.M.R. 694, 695 (N.B.R.1964). *Accord: United States v. Harvey*, 6 M.J. 545 (N.C.M.R.1978), *pet. denied*, 6 M.J. 193 (C.M.A.1979). *Contra: United States v. Underwood*, 41 C.M.R. 410 (A.C.M.R.1969). *United States v. Geisler*, 37 C.M.R. 530 (A.B.R.1966).

For the foregoing reasons, I dissent from the conclusion that AAFES merchandise, regularly offered for sale to members of the armed forces, is not "military property" within the meaning of Article 108. Hence, I would not hold accused's pleas of guilty to be improvident as to that offense.

In the United States Court of Military Appeals Certificate for Review

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES COURT OF MILITARY APPEALS:

1. Pursuant to the Uniform Code of Military Justice, Article 67(b)(2), 10 U.S.C. § 867(b)(2), the record of trial and decision of the Court of Military Review, United States Air Force, in the above-entitled case, are forwarded for review.

2. On 9 February 1981, the accused was found guilty of a violation of the Uniform Code of Military Justice, Articles 86, 89, 108 and 134, 10 U.S.C. §§ 886, 889, 908, 939, and was sentenced to a bad conduct discharge, confinement at hard labor for three months, forfeiture of $250.00 per month for four months, and reduction to the grade of E–1. On 26 February 1981, the convening authority approved the sentence. On 9 April 1981, the officer exercising general court-martial jurisdiction disapproved the findings of guilty of Charge I and its Specification (violation of Article 89) and approved only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for two months, forfeiture of $250.00 per month for two months, and reduction to airman basic. On 25 September 1981, the Court of Military Review set aside the finding of guilty of Charge II and its Specification (violation of Article 108) and affirmed the remaining findings of guilty and so much of the sentence as provided for confinement at hard labor for two months.

3. It is requested that action be taken with respect to the following Issue:

WAS THE COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT RETAIL MERCHANDISE OF THE ARMY AND AIR FORCE EXCHANGE SERVICE WAS NOT, UNDER THE CIRCUMSTANCES OF THIS CASE, "MILITARY PROPERTY" OF THE UNITED STATES"?

(s) James Taylor, Jr.
JAMES TAYLOR, JR.
Major General, USAF
Acting The Judge Advocate General
United States Air Force

Received a copy of the foregoing Certificate of Review on this 9th day of October 1981.

(s) James P. Porter
JAMES P. PORTER
Colonel, USAF
Government Trial and Appellate Counsel Division

(s) Verlin D. Dickman
VERLIN D. DICKMAN
Colonel, USAF
Defense Services Division