UNITED STATES, Appellant,

v.

**Cheryl M. SCHELIN, Airman, U.S. Air Force, Appellee.**

No. 42011.
ACM S25219.

U.S. Court of Military Appeals.

March 28, 1983.

For Appellant: *Major Michael J. Hoover* (argued); *Colonel James P. Porter* (on brief); *Colonel Kenneth R. Rengert.*

For Appellee: *Captain Teresa J. Stremel,* USAFR (argued); *Colonel George R. Stevens, Captain G. Michael Lennon* (on brief); *Major Alexander S. Nicholas, Major Richard A. Morgan.*

*Opinion of the Court*

COOK, Judge:

The issue before us is whether retail merchandise of the Army and Air Force Exchange Service (AAFES) was "military property of the United States" within the meaning of Article 108, Uniform Code of Military Justice, 10 U.S.C. § 908. 12 M.J. 94 (1981).

Appellee was convicted, pursuant to her pleas, of, *inter alia,* disposing of military property of the United States without proper authority, in violation of Article 108. The facts as revealed by the providence inquiry and as set forth by the Court of Military Review are these:

A Marine friend of the accused and three other males asked her to store two bulky laundry bags in her barracks room locker. She states that she did not know what the two laundry bags contained, but agreed to the proposal. The visitors then put the bags in her locker and locked them up. The next day, her Marine friend and the others returned and opened the bags in her presence. One bag contained cameras and camera lenses; the other contained wrist watches, a

portable radio, and a portable cassette player.

After the accused observed price tags on several items and watched her visitors wipe their fingerprints off the items, she realized that they must be stolen. When the men left, the remaining items were put back in the laundry bags and returned to the accused's locker. Her friend promised the men would return, but they never did. After a day or two, the accused gave the laundry bags to another airman. The items in both bags were the property of the AAFES, a non-appropriated fund instrumentality of the United States Government.

*United States v. Schelin,* 12 M.J. 575, 576 (A.F.C.M.R.1981). Pursuant to its fact-finding power,[1] the Court of Military Review found that the property in question "was retail merchandise regularly offered for sale by the Exchange to members of the armed forces." *Id.* However, though the Court of Military Review concluded that the property belonged to a government instrumentality, they held that it was "not military property of the United States." Accordingly, the court set aside the findings of guilty of the charge and dismissed it. *Id.* at 578. Pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), the Acting Judge Advocate General of the Air Force certified[2] the case to this Court for review.

Article 108 provides that:

Any person subject to this chapter who, without proper authority—

(1) sells or otherwise disposes of;

(2) willfully or through neglect damages, destroys, or loses; or

(3) willfully or through neglect suffers to be lost, damaged, destroyed, sold, or wrongfully disposed of;

any *military property of the United States,* shall be punished as a court-martial may direct.

(Emphasis added.)

The Manual for Courts-Martial, United States, 1969 (Revised edition), gives little guidance as to the meaning of the phrase, "military property of the United States." The Manual does state, however, in paragraph 187*c*:

Although there may be no direct evidence that the property in question was military property of the United States, circumstantial evidence that the property was of a type and kind *issued for use in, or furnished and intended for, the military service of the United States,* might, together with other proved circumstances, warrant the court in inferring that it was such military property of the United States.

(Emphasis added.) *See also* para. 187*c*, Manual for Courts-Martial, United States, 1951. The emphasized language in the foregoing quotation from the Manual seems to be derived from certain of the forerunners of Article 108, in particular Articles of War 84[3] and 94,[4] and Article 14, Articles

---

1. Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c).

2. As stated by the Acting Judge Advocate General, the question is:

   WAS THE COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT RETAIL MERCHANDISE OF THE ARMY AND AIR FORCE EXCHANGE SERVICE WAS NOT, UNDER THE CIRCUMSTANCES OF THIS CASE, "MILITARY PROPERTY OF THE UNITED STATES?"

3. Article of War 84 provided that:

   Any soldier who sells or wrongfully disposes of or willfully or through neglect injures or loses any horse, arms, ammunition, accouterments, equipment, clothing, or other property issued for use in the military service, shall be punished as a court-martial may direct.

4. Article of War 94 provided that:

   Any person subject to military law ... [w]ho steals, embezzles, knowingly and willfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordinance, arms, equipment, ammunition, clothing, subsistence stores, money, or other property of the United States *furnished or intended for the military service thereof* ...

   Shall, on conviction thereof, be punished by fine or imprisonment, or by such other punishment as a court-martial may adjudge ...

   (Emphasis added.)

for the Government of the Navy.[5] Otherwise, we can find nothing in the legislative history of Article 108 which sheds light on the Congressional intention as to the meaning of the words "military property of the United States."

At least two meanings of "military property" are readily apparent. In a narrower sense, it could refer to property having some unique military nature or function, such as tanks, cannons, or bombers. In a broader sense, it could refer to any property belonging to or under the control of the military. The Navy Court of Military Review has adopted the latter, broader definition. *See United States v. Harvey*, 6 M.J. 545 (N.C.M.R.1978), *pet. denied*, 6 M.J. 193 (1979); *United States v. Busic*, 2 M.J. 1165 (N.C.M.R.1975); *United States v. Mullins*, 34 C.M.R. 694 (N.B.R.1964). The Army and Air Force Courts of Military Review, on the other hand, have generally adopted the former, narrower definition. *United States v. Schelin, supra; United States v. Underwood*, 41 C.M.R. 410 (A.C.M.R.1969); *United States v. Geisler*, 37 C.M.R. 530 (A.B.R. 1966); *United States v. Deevers*, 26 C.M.R. 670 (A.B.R.1958); *United States v. Waddell*, 23 C.M.R. 903 (A.F.B.R.1957); *United States v. Suthers*, 22 C.M.R. 787 (A.F.B.R. 1956); *United States v. Rivers*, 3 C.M.R. 564 (A.F.B.R.1952). *But cf. United States v. Foust*, 20 C.M.R. 907 (A.F.B.R.1955). The Coast Guard Court of Military Review, insofar as we are aware, has not addressed this issue.

We agree with the majority of the court below that retail merchandise of the Army and Air Force Exchange Service[6] was not "military property of the United States." We note that Article 108 criminalizes, *inter alia,* merely negligent conduct. Except in unusual circumstances, negligent conduct is generally left to the realm of civil law.[7] *See* W. Prosser, *Law of Torts* Chapter 5 (4th ed. 1971); Model Penal Code § 2.02(3) (Proposed Official Draft, 1962). In the absence of any Congressional guidance, it seems most likely to us that "military property" was selected for special protection due to its role in the national defense. In other words, it is either the uniquely military nature of the property itself, or the function to which it is put, that determines whether it is "military property" within the meaning of Article 108. We do not suggest that it is only tanks, cannons, or bombers that merit the protection of Article 108, for many items of ordinary derivation are daily put to military use. However, retail merchandise of the Army and Air Force Exchange Service does not seem to fit into that specially-protected category.[8]

Furthermore, at the very minimum, a glaring ambiguity is presented. And since criminal statutes must be strictly construed, any ambiguity must be resolved in favor of the accused. *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973).

Accordingly, the certified question is answered in the affirmative, and the decision

---

**5.** Article 14, Articles for the Government of the Navy, provided that:

> Fine and imprisonment or such other punishment as a court martial may adjudge, shall be inflicted upon any person in the naval service of the United States—
>
> \* \* \* \* \* \*
>
> Eighth ... Who steals, embezzles, knowingly and willfully misappropriates, applies to his own use or benefit, or wrongfully and knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, subsistence stores, money or other property of the United States, furnished or intended for the military or naval service thereof.

**6.** We limit our decision here to the Army and Air Force Exchange Service. Because of their separate development and possible differences in structure not before the Court, we make no comment on the status of retail property of Navy, Marine Corps, and Coast Guard exchanges and stores.

**7.** By comparison, Article 109, UCMJ, 10 U.S.C. § 909, pertaining to waste, spoilage, destruction, or damage of "property other than military property of the United States," requires a higher *mens rea* than simple negligence.

**8.** Of course, we recognize that appellant pleaded guilty here to an intentional, rather than negligent, disposition of property. But this does not affect our analysis of the nature of property addressed by Article 108.

of the United States Air Force Court of Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.