UNITED STATES, Appellee,

v.

Kenneth L. HEMINGWAY, Specialist
U.S. Army, Appellant.

No. 67,579.
CM 9003416.

U.S. Court of Military Appeals.

Argued Dec. 2, 1992.

Decided March 11, 1993.

For Appellant: *Captain Robert Lane
Carey* (argued); *Colonel Robert B. Kirby,
Lieutenant Colonel James H. Weise, Captain Robin N. Swope* (on brief).

For Appellee: *Captain Steven M. Walters* (argued); *Colonel Dayton M. Cramer,
Lieutenant Colonel Daniel J. Dell'Orto,
Captain Timothy W. Lucas* (on brief).

*Opinion of the Court*

WISS, Judge:

Before a general court-martial consisting
of a military judge alone, appellant pleaded
guilty to 2 specifications each of larceny of
military property and conspiracy to commit
larceny and forgery, in violation of Articles
121 and 81, Uniform Code of Military Justice, 10 USC §§ 921 and 881, respectively.

After the military judge had accepted appellant's pleas and entered findings consistent with them, he sentenced appellant to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement to 24 months but otherwise approved the trial results. The Court of Military Review affirmed without opinion.

Upon appellant's petition, this Court granted review of the following two issues of law:

WHETHER THE MILITARY JUDGE IMPROPERLY ADVISED APPELLANT CONCERNING THE MAXIMUM ALLOWABLE SENTENCE THEREBY RENDERING APPELLANT'S PLEA IMPROVIDENT.

WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE FINDINGS OF GUILTY TO LARCENY OF MILITARY PROPERTY (CHARGE III) [RENUMBERED CHARGE II] BECAUSE UNITED STATES TREASURY CHECKS AND THE CORRESPONDING FUNDS ARE NOT "MILITARY PROPERTY."

As to the second issue, contrary to appellant's assertion, we find that the fruit of appellant's larcenies was "military property" within the meaning of paragraphs 46b(1)(e), 46e(1)(c), and 32c(1), Part IV, Manual for Courts–Martial, United States, 1984 (Change 3). As to the first issue, we hold that any misunderstanding as to the maximum sentence to confinement did not render appellant's pleas improvident.

I

Appellant, who was a unit finance clerk, and a friend named Hooker concocted a scheme to steal and to forge United States Treasury checks from the travel pay section of the finance office to which appellant had access. On each of two occasions charged here, they stole a single check (one in the amount of $1,800.00 and the other for $2,485.23) and deposited it into Hooker's own bank account.

From each incident, two charges arose relevant to this appeal: conspiracy to commit forgery and larceny, and larceny. Each of the conspiracy specifications alleged that appellant and Hooker conspired to commit "forgery by falsely making the signature of [a named person] as an indorsement to United States Treasury check [of a certain number]; and larceny of $1,800.00 [or $2,485.23], *property of the United States Government....*" (Emphasis added.) As to each larceny, it was alleged that appellant did "steal [a] United States Treasury Check [of a specific number], of some value, and $1,800.00 [or $2,485.23] in United States currency, both being *military property of the United States.*" (Emphasis added.)

During the providence inquiry into appellant's tendered guilty pleas to these charges (other charges later were withdrawn), the military judge queried counsel regarding their views of the maximum sentence. Defense counsel answered that his advice to appellant regarding maximum confinement was 35 years, though he offered no rationale for that figure. Trial counsel responded that he viewed each conspiracy and each larceny to carry a possible confinement of 10 years, for a total maximum confinement of 40 years.

The military judge prodded trial counsel further: "Okay. And you're talking about the larceny because it was military property?" Trial counsel responded, "Yes, sir." *See* para. 46e(1)(c). Defense counsel acknowledged that the checks themselves were military property; however, in somewhat ambiguous language, he seemed to argue that the money—since it was intended to go to a member of the military for performing certain services—was not.

Without much further airing of the matter, and without anyone expressly noting that the conspiracy specifications alleged "property of the United States Government" and not "military property of the United States," the military judge concluded—actually agreed to by defense counsel—that the maximum confinement was, indeed, 40 years.

## II

The answer to the question raised in appellant's second assigned issue—whether the property stolen was "military property" versus some other kind of property—affects the maximum sentence to confinement that appellant faced on the two larceny specifications: If military property, it was 10 years for each larceny, for a total of 20 years for those 2 specifications; if not, it was 5 years, for a total of 10 years for the larcenies. *Compare* para. 46e(1)(c) *with* para. 46e(1)(d) (Change 3). Although the basis of appellant's argument on the first assigned issue is broader than this question of the character of the property stolen, *see* opinion, *infra*, the answer to this question certainly will impact on our resolution of the first issue. Accordingly, we will initially resolve the second assigned issue as a predicate to resolving the first.

## A

This sentencing scheme to which we just referred, of course, is within the authority of the President to determine. Art. 56, UCMJ, 10 USC § 856; *United States v. Pitt*, 35 MJ 478 (CMA 1992). Although paragraph 46, which addresses larceny, does not itself define what is included within the term "military property" for these purposes, a "Note" preceding paragraph 46b(1)(e) incorporates the definition of that term that is set out in paragraph 32c(1), which addresses Article 108—"sale, loss, damage, destruction, or wrongful disposition" of "[m]ilitary property of the United States."

Paragraph 32c(1)(Change 3) states, "Military property is *all* property, real or personal, owned, held, or used by one of the armed forces of the United States." (Emphasis added.) A more inclusive definition of military property—assuming that the particular property in question is "owned, held, or used by one of the armed forces"—is difficult to imagine.

Concededly, inasmuch as this language in paragraph 32c(1) seeks to define the meaning and ambit of a specific punitive article, it is not conclusively authoritative.

As applied to this case, though, it is fully consistent with this Court's view of the scope of that term for purposes of Article 108, in *United States v. Schelin*, 15 MJ 218 (CMA 1983).

In *Schelin*, the accused had wrongfully disposed of certain retail merchandise of the Army and Air Force Exchange Service, and the question before the Court was whether such property was "military property of the United States." The Court noted language in paragraph 187c of the Manual for Courts–Martial, United States, 1969 (Revised edition), that made reference to property " 'of a type and kind *issued for use in, or furnished and intended for, the military service of the United States,* ....' " 15 MJ at 219 (emphasis added in text of *Schelin* ). The Court specifically observed that "[t]he emphasized language ... seems to be derived from certain of the forerunners of Article 108, in particular Articles of War 84 and 94, and Article 14, Articles for the Government of the Navy." *Id.* at 219–20 (footnotes omitted).

As footnotes 4 and 5 of that opinion make clear, two of those "forerunners of Article 108"—Article of War 94 and Article for the Government of the Navy 14—referred to " 'ordinance, arms, equipment, ammunition, clothing, subsistence stores, *money,* or other property of the United States *furnished or intended for the military....* ' " 15 MJ at 219 n.4 (first emphasis added; second emphasis added in *Schelin* ); 15 MJ at 220 n.5 (emphasis added). Otherwise, the Court was unable to find anything "in the legislative history of Article 108 which sheds light on the Congressional intention as to the meaning of the words 'military property of the United States.' " *Id.* at 220.

At that point, the Court noted two readily apparent meanings: "In a narrower sense, it could refer to property having some unique military nature or function, such as tanks, cannons, or bombers. In a broader sense, it could refer to any property belonging to or under the control of the military." *Id.* In ruling retail merchandise of the exchange service *outside* the

scope of "military property of the United States," the Court commented on these two options:

> In the absence of any Congressional guidance, it seems most likely to us that "military property" was selected for special protection due to its role in the national defense. In other words, it is either the uniquely military nature of the property itself, or the function to which it is put, that determines whether it is "military property" within the meaning of Article 108. We do not suggest that it is only tanks, cannons, or bombers that merit the protection of Article 108, for many items of ordinary derivation are daily put to military use.

*Id.* at 220.

■ Consistent with this Court's views and approach in *Schelin*, and especially with the reference in Article of War 94 and Article for the Government of the Navy 14 to "money" as among "property of the United States furnished or intended for the military" service, we conclude that appropriated funds belonging to the United States Army—even if only being "held" by the Army for immediate disbursement to an individual soldier for duty travel—are within the meaning of "military property of the United States" for purposes of Article 108 and, therefore—through paragraph 32c(1)—for purposes of determining the maximum sentence to confinement for larceny under paragraph 46b(1)(e) and e(1)(c).

**B**

■ In support of his first assigned issue, appellant contends that his pleas were improvident because they were entered under a substantial misunderstanding of the correct maximum sentence to confinement. *See United States v. Poole*, 26 MJ 272 (CMA 1988); *United States v. Hedlund*, 7 MJ 271 (CMA 1979); *United States v. Harden*, 1 MJ 258 (CMA 1976). First, appellant bootstraps a hoped-for answer to his second issue and argues that the non-military character of the property he stole reduces the total maximum sentence on the two larceny specifications from 20 years to

10. Given our disposition of his legal contention as to the nature of that property, this aspect of his argument is no longer available to him.

Second, and more viably, he points out that the two conspiracy specifications allege that the checks that he and Hooker conspired to forge and the money that they conspired to steal were "property of the United States Government," *not* "military property." Thus, he argues, the military judge erred when he concluded, and advised appellant, that each conspiracy specification carried a maximum of 10 years rather than 5 years. We agree that the maximum sentence was erroneously calculated in this regard, but we disagree with appellant that this caused his pleas to be improvident.

Paragraph 46b(1)(a)–(d) correctly sets out the elements of larceny under Article 121 of the Uniform Code. Additionally, as we mentioned earlier, a "Note" that follows subparagraph (d) states, "If the property is alleged to be military property, as defined in paragraph 32c(1), add the following element"; the "following element" is, "(e) That the property was military property." (Change 3). Furthermore, in paragraph 46e (Change 3), where the President has set out the maximum punishments, the delineations are whether the value of the property stolen was more than $100 and whether the property stolen was "military property." There is no special repercussion at all flowing from whether the property was "property of the United States Government."

Consequently, we agree with appellant that, in the absence of an allegation that the object of the conspiracy to steal was "military property," the maximum confinement imposable for each of the two conspiracy specifications here was 5 years. *See* para. 46e(1)(d) (Change 3). This reduces the total maximum sentence to confinement that appellant faced to 30 years (5 years for each conspiracy and 10 years for each larceny of military property), not 40 years, as the military judge advised.

Several factors, however, convince us that this misadvice was not material in appellant's decision to plead guilty. First, while this Court has "rejected a mathematical formula for calculating when the misunderstanding converts into reversible error," *see United States v. Poole, supra* at 273–74, still the difference between the number of years legally facing appellant and the number he believed he was facing is relevant to whether the misunderstanding was "substantial." Second, defense counsel initially had contended that his client faced 35 years' confinement, so appellant made his decision to plead guilty thinking the maximum confinement was only 5 years more than the correct legal maximum. Third, he pleaded guilty pursuant to a plea bargain with the convening authority that the latter would approve only 24 months' confinement—a truly substantial inducement regardless whether the legal maximum was 30 years, 35 years, or 40 years.

Our task is to "look to 'all the circumstances of the case presented by the record ... to determine whether the misapprehension of the maximum sentence affected the guilty plea, or whether that factor was insubstantial in his decision to plead.'" *Id.* at 274, quoting *United States v. Hunt,* 10 MJ 222, 223–24 (CMA 1981). Here, we are confident that the misapprehension was not a substantial factor in his decision. *Cf. United States v. Walker,* 34 MJ 264 (CMA 1992).

### III

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.