# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39279**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Veda E. HART**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 August 2018

———————————

*Military Judge:* Mark F. Rosenow (arraignment); Brendon K. Tukey.

*Approved sentence:* Confinement for 1 year, forfeiture of $500.00 pay per month for 1 month, reduction to E-1, and a reprimand. Sentence adjudged 23 February 2017 by GCM convened at Travis Air Force Base, California.

*For Appellant:* Major Patrick A. Clary, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major J. Ronald Steelman III, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Judge MINK delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

MINK, Judge:

A general court-martial convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of wrongful use of fentanyl on divers occasions, one specification of wrongful use of ketamine on divers

occasions, and three specifications of larceny of military property of a value less than $500.00 on divers occasions, in violation of Articles 112a and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 921. Officer members sentenced Appellant to one year of confinement, forfeiture of $500.00 pay per month for one month, reduction to E-1, and a reprimand. The convening authority approved the sentence as adjudged, after having deferred all adjudged and mandatory forfeitures until action. The convening authority also waived the mandatory forfeitures for a period of six months for the benefit of Appellant's spouse.

On appeal, Appellant raises three assignments of error: (1) whether Appellant is entitled to new post-trial processing because the convening authority took action in reliance on conflicting guidance from his staff judge advocate (SJA) regarding the adjudged forfeiture; (2) whether the portion of Appellant's guilty plea to larceny of military property that admitted to taking used medication out of a waste bin was improvident; and (3) whether Appellant's plea to Specification 2 of Charge I was provident when ketamine is a Schedule III controlled substance, not a Schedule II controlled substance as charged and as described during the providence inquiry. Having found an error that materially prejudiced Appellant's substantial rights in the post-trial processing of his case, we modify the sentence. We also modify the finding as to Specification 2 of Charge I, but otherwise affirm the findings and, as modified and reassessed, the sentence.

## I. BACKGROUND

In January 2016, Appellant was a medical technician assigned to the Emergency Department at David Grant Medical Center (the hospital) at Travis Air Force Base, California. In the course of performing his duties, Appellant discovered a partially used vial of fentanyl, a controlled substance, in a medication waste bin inside the hospital. Appellant retrieved the vial from the bin, took it to his home in Fairfield, California, withdrew the fentanyl into a syringe, and injected himself with it. Later, on two separate occasions Appellant found partially used vials—one containing fentanyl and the other containing ketamine, also a controlled substance—in the medication waste bin. Appellant retrieved those vials from the bin and took them to his home, where he again injected himself with the drugs. Each of the vials Appellant retrieved from the medication waste bin had been improperly disposed of or "wasted" by medical personnel. To properly dispose of or "waste" unused medication, medical personnel were to withdraw the unused medication into a syringe, squeeze the syringe to discharge the medication into a piece of cloth, and then dispose of the cloth by placing it in the medication waste bin. When the medication waste bin was full, the contents were then removed from the hospital and burned.

After finding no additional vials containing unused medication in the medication waste bin, Appellant discovered that he could obtain both fentanyl and ketamine from the Pyxis medication console in the Emergency Department. The Pyxis console was an automated medication dispensing system stocked by the hospital pharmacy. Nurses and other medical personnel accessed the Pyxis by scanning their fingerprints. One of Appellant's extra duties was to inventory pregnancy tests that were stored in the Pyxis console. Appellant began asking nurses to log him into the Pyxis console so that he could inventory pregnancy tests, falsely claiming there was a problem with his login. Whenever a nurse had logged into the Pyxis console to give him access and walked away leaving him unsupervised, he would withdraw fentanyl or ketamine from the console. Appellant would then take whichever drug he obtained home with him where he would inject himself with the drug. Appellant stole fentanyl from the Pyxis console approximately 39 times and ketamine from the Pyxis console approximately four times. Appellant admitted during his guilty plea inquiry that he had been diagnosed with Post-Traumatic Stress Disorder (PTSD) as a result of deployments to Afghanistan in 2012 and again in 2014, and he began using the drugs to obtain relief from his PTSD symptoms, including anxiety, depression, anger, suicidal thoughts, nightmares, and insomnia.

In addition to stealing fentanyl and ketamine from the hospital, Appellant also stole various items from the Emergency Department, including syringes, intravenous (IV) start kits, and saline.

## II. DISCUSSION

### A. Post-trial Processing

#### 1. Law

The proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. LeBlanc,* 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004)). When reviewing post-trial errors, we will grant relief if an appellant presents "some colorable showing of possible prejudice." *LeBlanc*, 74 M.J. at 660 (quoting *United States v. Scalo*, 60 M.J. 435, 437 (C.A.A.F. 2005)).

#### 2. Analysis

As Appellant asserts and the Government concedes, the advice provided to the convening authority by the SJA in his recommendation (SJAR) conflicted with the advice provided in the addendum to the SJAR by the acting SJA. In the SJAR, the SJA recommended the sentence be approved as adjudged, except for the forfeiture of $500.00 pay for one month so as to "provide for [Appellant's] wife." However, after reviewing Appellant's clemency matters, the acting SJA stated in the addendum to the SJAR that "my earlier recommendation remains

unchanged" but then recommended that the convening authority "approve the findings and sentence as adjudged." The convening authority subsequently approved the sentence as adjudged, including the forfeiture of pay.

As a result of this post-trial processing error, Appellant has established some colorable showing of possible prejudice, i.e., approval of the forfeiture of $500.00 pay for one month. In addition to acknowledging this error, the Government states its lack of objection to this court "taking appropriate action as it sees fit." Upon these facts, we find it unnecessary to return this case to the convening authority to effectuate a remedy for this error. Instead, we exercise our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to modify Appellant's approved sentence by disapproving the forfeiture of $500.00 pay for one month.

## B. Providence of Appellant's Guilty Pleas

### 1. Law

We review a military judge's decision to accept a guilty plea for an abuse of discretion, and we review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991) (stating that a plea of guilty should not be overturned as improvident unless the record reveals a substantial basis in law or fact to question the plea). The appellant maintains the burden to demonstrate a substantial basis for questioning the plea. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "In reviewing the providence of [the a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)). A military judge abuses his discretion when accepting a plea if he does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969). This is an area in which the military judge is entitled to significant deference, given the often undeveloped factual record in such cases as compared to that of a litigated trial. *Inabinette*, 66 M.J. at 322.

### 2. Analysis

### a. Providence of the Plea to Larceny of Used Medication

Appellant next asserts that the portion of his guilty plea pertaining to larceny of the partially used vials of fentanyl and ketamine were improvident because the discarded vials were no longer military property and were "trash waiting to be disposed." We disagree.

During Appellant's guilty plea inquiry, the military judge questioned Appellant regarding the nature of the partially used vials of fentanyl and ketamine that Appellant discovered in the medication waste bin, including whether they constituted military property and whether they had been abandoned by the military. The following exchange occurred between the military judge and Appellant regarding the larceny of fentanyl:

> MJ [Military Judge]: I told you earlier that military property was either of a uniquely military nature, or it is used by the armed forces in the furtherance of its mission. Does the emergency department there over [sic] the hospital here on Travis Air Force Base, does it use fentanyl as part of its military mission to treat active duty members, dependents, and retirees?
>
> ACC [Appellant]: Yes, sir, it does, all branches of the military.
>
> MJ: Now you also took fentanyl out of, that had been in [sic] properly wasted, out of the waste disposal container, is that correct?
>
> ACC: Yes, sir.
>
> MJ: All right, now, at the time let me just tell you that might be considered abandoned property, right? "Abandoned property" is property which the owner has thrown away, relinquishing all right and title to, and possession of the property with no intention to reclaim it. Someone who finds, takes, and keeps abandoned property becomes the new owner and does not commit larceny. Let me just talk to you a little bit about that. At that point, when it is thrown in there, is it effectively thrown away then, or is it thrown away later when someone actually comes and collects up that bin and goes to properly dispose of it?
>
> ACC: It would be thrown away later. That medication bin is next to the Pyxis and used as part of ER [Emergency Room] daily procedures to waste medications up until it's full. So, it is property of the ER and the Air Force until it is properly removed and disposed of.

MJ: And that was going to be my next question, so the emergency department has a specific standard operating procedure for how it disposes of these empty containers, right?

ACC: Yes, sir.

MJ: Or they should at least be empty when they go in, right?

ACC: Yeah, it's not a trashcan. It's a blue medication bin.

MJ: And does the emergency department keep kind of affirmative control of that until someone comes along, who is properly authorized to take that away and throw it away?

ACC: It is just next to the Pyxis. I mean, it's not locked. It is open to waste medications, but it's in one spot at all times.

MJ: And did you have any reason to believe that you were authorized to take anything out of there?

ACC: No, sir.

MJ: Did you have any reason to believe that by putting the waste in there, that at that point the nurse who had thrown [sic] in there, or whoever had thrown it in there, that their intent was to abandon it at that point?

ACC: No, sir, because it was specifically for medication waste and not trash.

MJ: Do you believe that even in regards to the items that you took out of the medication waste bin, that those still belongs [sic] to the United States at the time that you grabbed those out [sic] there?

ACC: Yes, sir, until they are properly disposed of.

MJ: And when you took us [sic] out of there, was it the intent to permanently deprive the United States of them?

ACC: Yes, sir, I had no intention of returning them.

MJ: Now, I am assuming that even though some of these vials still had usable dosages in them, they couldn't be used anymore for patients because they had been thrown away in that fashion, or put into that container?

ACC: Yes, sir. In that container, there are multiple different medications and things wasted in there so, it would not be pulled out and used on a patient.

MJ: But it still could be used nefariously. So, for example, you used it on yourself for the purposes that you described when we talked about your use of fentanyl, is that right?

ACC: That is correct.

MJ: And so, the remaining fentanyl that was still in the vial, it was still potent and still had an effect?

ACC: Yeah, it's a rubber sealed vial, so it was still fully effective for its use.

MJ: So, even though the hospital could no longer use it to treat a patient, did it still have value in the sense that it still could create the sensations that you were desiring to create?

ACC: Yes, sir.

MJ: All right, so would you agree that because it was still potent and still usable and still would have its effect, that it had some value, even if that value was less than $500?

ACC: Yes, sir.

Later, during the military judge's questioning of Appellant regarding his larceny of the partially used vial of ketamine, Appellant testified similarly regarding the nature and value of unused medication placed in the medication waste bin. Then the following exchange occurred between the military judge and Appellant:

MJ: And why did it still have value when you took it out of the waste bin do you think?

ACC: There was still medication in it, and I could use it. It had value to me and value to the Air Force, as it was still usable, and in emergency situations it could be used, I guess.

Whether property is "military property" is a question of law. *United States v. Sneed*, 43 M.J. 101, 103 (C.A.A.F. 1995). There are two factors we consider in resolving that question: (1) the "uniquely military nature of the property itself"; and (2) "the function to which it is put." *Id.* (quoting *United States v. Schelin*, 15 M.J. 218, 220 (C.M.A. 1983)).

Appellant relies on the opinion of the United States Court of Appeals for the Armed Forces (CAAF) in *Sneed* as support for his position that the discarded vials of unused medication were no longer military property. *Id.* In *Sneed*, the CAAF examined whether private property held by the armed forces for use as evidence in a court-martial constituted "military property." *Id.* The CAAF found that even private property "while it is held in the exclusive custody of a service pending termination of its need by that service" constituted

military property of the United States. *Id.* at 104. The CAAF further held that the property was not divested of its status even after the court-martial and prior to the return of the property to its lawful owner.

We find a similar rationale applicable here. Both the fentanyl and ketamine that Appellant stole qualified as military property as a result of the "function to which it [was] put." The fact that the three vials were placed in the medication waste bin did not divest them of their status as military property, particularly in light of Appellant's unchallenged assertion that the partially used vials still had value and could have potentially been used in an emergency. Based on Appellant's testimony in response to the military judge's questioning, we find that the partially used vials of fentanyl and ketamine were military property and had not been abandoned when Appellant stole them. As a result, Appellant's guilty plea to the larceny of the partially used vials of fentanyl and ketamine was provident.

### b. Providence of the Plea to Ketamine as a Schedule II Substance

Lastly, Appellant asserts that his plea to Specification 2 of Charge I was improvident because ketamine is in fact a Schedule III controlled substance, rather than a Schedule II controlled substance as was charged and to which he pleaded guilty. Appellant points to a single reference in Attachment 4 to Prosecution Exhibit 1, the stipulation of fact, that identifies ketamine as a Schedule III controlled substance as a basis to find his plea improvident. Again, we disagree that his plea was improvident despite the erroneous description of ketamine as a Schedule II rather than as a Schedule III controlled substance.

During Appellant's guilty plea inquiry regarding his use of ketamine, the military judge questioned Appellant regarding his use of the drug as well as its identification as a Schedule II controlled substance:

> MJ: And just as we did with Specification I of Charge I, what I want you to do now is just tell me why you're guilty of the offense that is alleged in Specification 2 of Charge I. In other words, just tell me what happened.

> ACC: Your honor, I am guilty of Specification 2 of Charge I, the offense of wrongful use of ketamine, on divers occasions. I knowingly and wrongfully used ketamine multiple times, between January 2016 and 14 December 2016, even though I knew it was contraband in nature. I do not have a prescription to use it. I knowingly self-administered the ketamine into my body by injection. I used it several times between January and April 2016. I used it again in December 2016.

> . . .

MJ: Again, the specification describes ketamine, just like fentanyl, as being a schedule II controlled substance. At the time that you were using, as a result of your medical training and background, did you know what the drug schedule was?

ACC: Yes, sir, I knew what it was.

MJ: And they [sic] did you understand at that time, that ketamine was a schedule II controlled substance?

ACC: Yes, sir, I did.

MJ: So, at the time that you were using ketamine, did you understand that it was illegal for you to use without a prescription?

ACC: Yes, sir.

MJ: And did you specifically understand that it was a schedule II drug?

ACC: Yes, sir.

MJ: And since then, have you had a chance to consult with your attorney about that?

ACC: Yes, sir, I have.

MJ: And have your attorneys confirmed for you that ketamine is, in fact, a schedule II controlled substance?

ACC: Yes, sir, they have.

. . .

MJ: And we talked about examples, where somebody may sometimes put something in your drink and you don't even realize that you are using it, but that would not apply here?

ACC: No, I was physically injecting myself with it.

MJ: Okay. And every time he [sic] did that, you knew that it was ketamine; and how did you know that every time you used it was ketamine?

ACC: It always came out of those labeled bottles.

In addition, Prosecution Exhibit 1, the stipulation of fact introduced into evidence during Appellant's court-martial and agreed to and signed by Appellant, stated the following:

> [Appellant] wrongfully used ketamine, a Schedule II controlled substance, on divers occasions at or near Fairfield, California, between on or about 1 January 2016 and 31 December 2016.

> When he used ketamine, he did so knowingly and intentionally, and knowing that the substance he was injecting was ketamine. He used ketamine of his own free will, and was not forced to do so by anyone. He was not working for law enforcement nor did he have any legal or medical justification or authorization when he used it. He had no valid medical condition for having used ketamine. His use of ketamine was intentional, wrongful, and without legal justification.

Article 112a, UCMJ, is entitled "Wrongful use, possession, etc., of controlled substances" and states, in pertinent part, "Any person . . . who wrongfully uses . . . a substance described in subsection (b) shall be punished as a court-martial may direct." Subsection (b) lists three categories of covered substances: (1) those listed in the text of the article; (2) those found on a schedule as prescribed by the President; and, (3) those found on Schedules I through V of the Controlled Substances Act. *See United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014).

The Manual for Courts-Martial specifies two elements that must be proved to establish the offense of wrongful use of a controlled substance: (1) that the accused used a controlled substance and (2) that the use by the accused was wrongful. *Manual for Courts-Martial, United States* (*MCM*)*,* pt. IV, ¶ 37b(2) (2016). The *MCM* defines "use" as "inject[ing], ingest[ing], inhal[ing], or otherwise introduc[ing] into the human body, any controlled substance." *Id.* at ¶ 37c(10). To be convicted of wrongful use of a controlled substance, the accused must know of the presence of the controlled substance and know of its contraband nature. *Id.* at ¶¶ 37c(5) and (10); *United States v. Mance*, 26 M.J. 244, 253–54 (C.M.A. 1988).

It is clear from Appellant's plea of guilty, the guilty plea inquiry, and other evidence in the record that Appellant wrongfully used ketamine fully understanding it was a controlled substance and knowing of its contraband nature. Appellant did not need to know "the exact pharmacological identity of the substance" he used so long as he knew his use of the substance he ingested was prohibited by law. *United States v. Stringfellow*, 32 M.J. 335, 336 (C.M.A. 1991). Unlike the circumstances in *United States v. Paul*, 73 M.J. 274 (C.A.A.F. 2014), cited by Appellant, the Government was not required to prove that ketamine was a Schedule II controlled substance to prove Appellant was guilty in this case. Appellant's guilty plea relieved the Government of having to do so. We then consider whether Appellant's plea of guilty to unlawfully using ketamine—whether he understood it to be a Schedule II or Schedule III controlled substance—was provident. We find that it was and the military judge did not abuse his discretion by accepting Appellant's guilty plea to this offense. We

further note that the maximum authorized punishment for Appellant's wrongful use of ketamine is exactly the same whether the drug was found on Schedule II or Schedule III. *MCM*, ¶ 37e(1)(a).

In view of the fact that ketamine is listed in Schedule III and not in Schedule II of the Controlled Substances Act, 21 C.F.R. § 1308.13(c)(7) (2018), we exercise our authority under Article 66(c), UCMJ, and except the term "Schedule II" from Specification 2 of Charge I to which Appellant pleaded and was found guilty, and affirm the finding of guilt as to the remaining language in the specification. In light of this modification, we reassess Appellant's sentence to the approved sentence, as modified by this court, finding that this modification to the specification does not alter the gravamen of the misconduct to which Appellant pleaded guilty. *See United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013).

### III. CONCLUSION

As discussed fully above, the sentence is approved except the words "forfeit $500.00 pay per month for 1 month," and we except the term "Schedule II" from Specification 2 of Charge I and affirm the finding of guilty as to the remaining language in the specification. The approved findings as modified and the sentence as modified and reassessed are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Article 59(a), UCMJ, 10 U.S.C. §§ 859(a), and Article 66(c). Accordingly, as modified, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

11